IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| KEMPS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  19-0753-CV-W-BP |
| | ) | |
| IPL, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER AND OPINION GRANTING DEFENDANT IPL, INC.'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Plaintiff has sued IPL, Inc., ("IPL"), and IPL USA, Inc., ("IPL USA"), asserting claims for

breach of warranty and breach of contract.  IPL seeks dismissal for lack of personal jurisdiction.

After considering the parties' arguments, the Motion to Dismiss, (Doc. 20), is **GRANTED** and

Plaintiff's claims against IPL are **DISMISSED WITHOUT PREJUDICE**.

**I.  BACKGROUND**

Plaintiff is a Delaware limited liability company with its principal place of business in

Minnesota; its sole member is a Kansas corporation with its principal place of business in Kansas.

(Doc. 18, ¶ 5.)  Plaintiff manufactures dairy food products, including frozen yogurt and ice cream.

(Doc. 18, ¶¶ 1, 11.)  IPL is a Canadian corporation with its principal place of business in Quebec.

(Doc. 18, ¶ 6.)  IPL USA is Missouri corporation with its principal place of business in Lee's

Summit, Missouri, and it is a wholly-owned subsidiary of IPL.  (Doc. 18, ¶ 7.)  Apart from these

two allegations, Plaintiff refers to the two companies collectively.  (Doc. 18, ¶ 1.)  Collectively,

Defendants "are highly-specialized consumer packaging engineer-manufacturers."  (Doc. 18, ¶ 1;

*see also* Doc. 18, ¶ 12.)  "In or before August 2015, [Plaintiff] sought a specialist that could provide

containers suitable for the low-temperature storage and handling conditions of a traditional frozen-

dairy-product supply chain." (Doc. 18, ¶ 13.) Negotiations ensued and culminated with a contract for Plaintiff to be supplied the one-pint containers it sought. (Doc. 18, ¶ 18.)

The containers proved to be defective in that the containers broke, causing pieces of plastic to be found in the food. (Doc. 18, ¶¶ 32-40.) In April 2017, Plaintiff recalled all products using the containers in question. (Doc. 18, ¶ 43.) Plaintiff has now filed suit, asserting claims for (1) breach of express warranty, (2) breach of the implied warranty of merchantability, (3) breach of the implied warranty of fitness for a particular purpose, and (4) breach of contract (for alleged breach of an indemnification agreement).

IPL argues that it lacks the minimum contacts necessary to be subject to personal jurisdiction in Missouri, and in this regard has provided an affidavit attesting that it did not enter a contract with Plaintiff for this particular container. Plaintiff points to its allegations that it entered into a contract with both Defendants. It also points to other contracts it entered with IPL to demonstrate that it has a business relationship with IPL and to suggest that their relationship is centered in Missouri. Plaintiff also argues that IPL consented to jurisdiction in Missouri. The Court resolves these arguments below.

## II. DISCUSSION

"To survive a motion to dismiss for lack of personal jurisdiction a plaintiff need only make a prima facie showing of personal jurisdiction over the defendant." *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 561 (8th Cir. 2003) (citing *Digi–Tel Holdings, Inc. v. Proteq Telecomm. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir.1996)). A plaintiff's prima facie showing "must be tested, not by the pleadings alone, but by affidavits and exhibits supporting or opposing the motion." *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 592 (8th Cir. 2011). Moreover, while the plaintiff bears the burden of proving, by the preponderance of the evidence, that personal

2

jurisdiction exists, unless the Court holds a hearing the facts must be viewed in the light most favorable to the plaintiff, and all conflicts must be resolved in the plaintiff's favor. *E.g., Fastpath, Inc. v. Arbela Technologies Corp.*, 760 F.3d 816, 820 (8th Cir. 2014).

In deciding whether Plaintiff has made a prima facie showing of personal jurisdiction, the Court must conduct two separate inquiries. First, the Court must determine whether Defendants' conduct was covered by Missouri's long-arm statute. Second, the Court inquires whether the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *See Myers v. Casino Queen, Inc.*, 689 F.3d 904, 909-10 (8th Cir. 2012) (citing *Bryant v. Smith Interior Design Grp., Inc.*, 310 S.W.3d 227, 231 (Mo. 2010)). Personal jurisdiction exists only if both the long-arm statute and the Due Process Clause are satisfied. For ease of discussion, the Court will focus on the Due Process Clause.

The Due Process Clause permits the exercise of two types of personal jurisdiction: general and specific. *See Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1779-80 (2017). General personal jurisdiction allows courts to hear "any and all claims against a defendant if its affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State." *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015) (cleaned up) (quoting *Daimler AG v. Baumann*, 571 U.S. 117, 126–27 (2014)). "Specific jurisdiction, by contrast, is proper when a defendant has certain contacts with the forum State and the cause of action arises out of those contacts." *Id.* The issue in this case is whether the Court may exercise specific personal jurisdiction over Defendants; Plaintiff has not argued that general personal jurisdiction is applicable.

Specific personal jurisdiction requires "that a defendant have certain 'minimum contacts' with the forum State[.]" *Creative Calling*, 799 F.3d at 979 (quoting *World–Wide Volkswagen*

*Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). "[T]he Eighth Circuit has established five factors that must be considered in determining whether sufficient minimum contacts exist for personal jurisdiction: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of [the forum state] in providing a forum for its residents; and (5) the convenience or inconvenience to the parties." *K-V Pharm.*, 648 F.3d at 592-93 (citations and quotations omitted). "Although the first three factors are primary factors, and the remaining two are secondary factors, we look at all of the factors and the totality of the circumstances in deciding whether personal jurisdiction exists." *Id.*

The critical issue raised by the parties is whether Plaintiff and IPL entered into a contract calling for the manufacture of the containers in Missouri, because such a contract would constitute a significant contact with Missouri and Plaintiff's claims would arise from such a contract. The Court acknowledges that this appears to be a merit-based issue. And, if Plaintiff were to present some indication that it entered a contract with IPL that specifically contemplated the containers' manufacture in Missouri, the Court might be compelled to conclude (at least for the present) that it has personal jurisdiction over IPL. However, beyond the Amended Complaint's allegations, Plaintiff has carefully avoided presenting such an indication.

For its part, IPL has – through affidavits – denied manufacturing or selling the containers at issue. (*E.g.*, Doc. 20-2, ¶¶ 7-9.) In response, Plaintiff relies on the First Amended Complaint's allegation that IPL "entered a supplier-purchaser relationship with [Plaintiff] to manufacture the Containers in Missouri and sell them from Missouri to [Plaintiff]." (Doc. 27, p. 6.)[1] However, the paragraphs of the First Amended Complaint that are identified – paragraphs 10, 19, 20, and 30 – do not allege that such a contract between Plaintiff and IPL existed. More importantly, as stated

---

[1] All page numbers are those generated by the Court's CM/ECF system.

earlier the Court must consider affidavits and exhibits supporting or opposing IPL's motion. In responding to IPL's affidavit denying that there is a contract between it and Plaintiff, Plaintiff presents a contract that "reflects one or more of several transactions between" it and IPL. Notably, this contract is not for the containers in question, (Doc. 27-1, pp. 4-23),[2] and Plaintiff does not provide any other documentation suggesting that such a contract exists.[3] Plaintiff also supplies a series of emails involving the defective containers, but the emails demonstrate (and an affidavit from IPL USA confirms) that Plaintiff corresponded with employees of IPL USA about the containers at issue in this case. (Doc. 27-1, pp. 28-30; Doc. 31-1, ¶¶ 1-2, 7.)

Thus, Plaintiff has not presented prima facie evidence suggesting that it entered a contract with IPL for the manufacture of the defective container, much less that any such contract called for the manufacturing to take place in Missouri. More particularly, Plaintiff has not responded to IPL's affidavit by presenting an affidavit or other documentation that, when construed in its favor, would permit such a conclusion. Given that the Court must consider IPL's affidavit and cannot rely solely on the Amended Complaint, for present purposes the Court concludes that no such contract exists. Therefore, the nature, quality and quantity of IPL's contacts with Missouri are greatly diminished. IPL is not subject to jurisdiction simply because its subsidiary – IPL USA – entered a contract and is subject to jurisdiction in Missouri. *See Daimler AG v. Bauman,* 571 U.S. 117, 136-37 (2014).[4] For the reasons stated above, the Court cannot conclude that this suit arises

---

[2] The Amended Complaint describes the defective containers as one-pint containers. (Doc. 18, ¶ 22.) The contract Plaintiff has provided is for a larger container. (Doc. 27-1, pp. 19, 22.) In addition, the defective containers were round, and the contract Plaintiff has supplied is for an oval-shaped container. (Doc. 31-1, ¶¶ 3, 5-6.)

[3] Plaintiff has also supplied an affidavit, but the affidavit does not allege that Plaintiff entered a contract with IPL for the product at issue; it only confirms that it entered a contract with IPL for a different product. (Doc. 27-1, pp. 1-2.)

[4] Personal jurisdiction could be asserted over the parent corporation "only if the parent so controlled and dominated the affairs of the subsidiary that the latter's corporate existence was disregarded so as to cause the residential corporation to act as the nonresidential corporate defendant's alter ego." *Epps v. Stewart Info. Servs. Corp.,* 327 F.3d 642, 649 (8th Cir. 2003). As an alternative to dismissing IPL, Plaintiff asks for time to conduct discovery to determine

from IPL's connections with IPL USA, or its connections with the State of Missouri. Plaintiff is not a resident of Missouri, so Missouri has no interest in providing it with a forum. And, even if defending this suit in Missouri may not be particularly inconvenient for IPL, this is a less-significant factor than the others that have been discussed. Therefore, Plaintiff has not established a prima facia case justifying personal jurisdiction over IPL.

Plaintiff contends that even if IPL is not subject to personal jurisdiction in Missouri, it has nonetheless consented to defending this suit in Missouri. First, Plaintiff points to the fact that after this suit was filed IPL's attorneys in Missouri were asked if they would accept service of the Complaint on IPL's behalf, and they agreed. According to Plaintiff, by consenting to service in Missouri IPL consented to suit in Missouri. However, a defendant "has a duty to avoid unnecessary expenses of serving the summons," Fed. R. Civ. P. 4(d)(1), and the Court is unwilling to hold that an attorney who agrees to accept service on behalf of a defendant (particularly one in a foreign country) so that the plaintiff can avoid the cost and burden of effectuating service has thereby waived the defendant's right to contest personal jurisdiction. Moreover, there is no legal authority to support Plaintiff's theory that by agreeing to accept service in Missouri (instead of forcing Plaintiff to comply with Rule 4(h)), IPL agreed to be sued in Missouri.

Plaintiff's second theory is that IPL waived its right to contest personal jurisdiction because counsel entered an appearance without specifying that the entry was made for the special purpose of contesting jurisdiction. (*See* Doc. 3.) Plaintiff correctly contends that a defendant *can* make a special appearance – but this does not mean that a defendant must do so. While a special appearance makes clear that an attorney is entering his or her intent to appear only to challenge

---

whether evidence supporting this theory (which has not been pleaded) can be marshalled. (Doc. 27, p. 11.) This request is denied. *See Viasystems, Inc. v. EBM-Papst St. Goergen GmbH & Co., KG,* 646 F.3d 589, 598 (8th Cir. 2011) (holding that a district court need not permit jurisdictional discovery when it is sought to support speculative or conclusory allegations).

jurisdiction, a general appearance does not signify that the attorney's client is submitting to the court's jurisdiction. Rule 12(b) provides that "[n]o defense or objection is waived by joining it with one or more defenses or objections in a responsive pleading or in a motion." And, Rule 12(h)(1) permits a jurisdictional defense to be asserted in a motion or in the defendant's answer. In concert, these provisions (along with Rule 12(g)) make the distinction between "general" and "special" appearances irrelevant. "The federal rules obliterated this dichotomy with the result that special appearances no longer are necessary to avoid the possibility of consenting to jurisdiction . . . ." 5C Wright & Miller, Federal Practice & Procedure § 1362 (3d ed.). An attorney "is no longer required at the door of the federal courthouse to intone that ancient abracadabra of the law . . . in order by its magic power to enable himself to remain outside even while he steps within. . . . [T]he defendant may assert [a jurisdictional defense] unless he has waived it by some action other than his voluntary appearance." *Orange Theatre Corp. v. Rayherstz Amusement Corp.,* 139 F.2d 871, 874 (3d Cir. 1944); *see also Lomanco, Inc. v. Missouri Pac. R. Co.,* 566 F. Supp. 846, 850-51 (E.D. Ark. 1983). "It was a central purpose of Rule 12(b) to do away with the necessity for a 'special appearance' by a defendant who sought to present a personal jurisdiction challenge." *Chase v. Pan-Pacific Broadcasting, Inc.,* 750 F.2d 131, 133 (D.C. Cir. 1984) (R. Ginsburg, J.); *see also Davenport v. Ralph N. Peters & Co.,* 386 F.2d 199, 204 (4th Cir. 1967). Instead, personal jurisdiction may be challenged so long as the defendant complies with Rule 12(h), has acted diligently to pursue the challenge, and has not otherwise acted in a manner inconsistent with its insistence that the court lacks jurisdiction. *Bayou Steel Corp v. M/V Amestelvoorn,* 809 F.2d 1147, 1148-49 (5th Cir. 1987); *see also Yeldell v. Tutt,* 913 F.2d 533, 538-39 (8th Cir. 1990). The Court holds that the general appearance by IPL's attorney did not waive IPL's right to challenge personal jurisdiction.

## III.  CONCLUSION

For the reasons stated above, the Court concludes that Plaintiff has not presented a prima facie case establishing that IPL, Inc. is subject to jurisdiction in Missouri.  The Court also concludes that IPL has not consented to, or waived its right to object to, being sued in this jurisdiction.  Accordingly, the Motion to Dismiss, (Doc. 20), is **GRANTED** and IPL, Inc. is **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**


/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
Date:  January 7, 2020                                        UNITED STATES DISTRICT COURT