IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| KEMPS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-0753-CV-W-BP |
| | ) | |
| IPL, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER AND OPINION DENYING DEFENDANT IPL USA'S
MOTION TO DISMISS COUNTS III AND IV FOR FAILURE TO STATE A CLAIM**

Plaintiff has sued IPL, Inc., ("IPL"), and IPL USA, Inc., ("IPL USA"), asserting claims for breach of warranty and breach of contract. IPL USA seeks dismissal of Counts III and IV, contending those two counts fail to state a claim. After considering the parties' arguments, the Motion to Dismiss, (Doc. 22), is **DENIED.**

## I. BACKGROUND

Plaintiff manufactures dairy food products, including frozen yogurt and ice cream. (Doc. 18, ¶¶ 1, 11.) IPL is a Canadian corporation with its principal place of business in Quebec. (Doc. 18, ¶ 6.) IPL USA is Missouri corporation with its principal place of business in Lee's Summit, Missouri, and it is a wholly-owned subsidiary of IPL. (Doc. 18, ¶ 7.) Collectively, Defendants "are highly-specialized consumer packaging engineer-manufacturers." (Doc. 18, ¶ 1; *see also* Doc. 18, ¶ 12.) "In or before August 2015, [Plaintiff] sought a specialist that could provide containers suitable for the low-temperature storage and handling conditions of a traditional frozen-dairy-product supply chain." (Doc. 18, ¶ 13.) In particular, Plaintiff sought "a series of one-pint, clear plastic containers (the 'Containers') based on [Defendants'] 'SealPack' pint containers" that could be used for its frozen dairy products. (Doc. 18, ¶ 1; *see also* Doc. 18, ¶¶ 14, 18.)

Negotiations ensued and culminated with a contract for Plaintiff to be supplied the one-pint containers it sought. (Doc. 18, ¶ 18.)

The containers proved to be defective in that the containers broke, causing pieces of plastic to be found in the food. (Doc. 18, ¶¶ 2, 32-40.) "The defects caused [Plaintiff] to recall the affected frozen dairy food products and take other corrective action at significant expense." (Doc. 18, ¶ 2; *see also* Doc. 18, ¶ 43.) In April 2017, Plaintiff gave Defendants written notice of the defects and asserted their liability for Plaintiff's costs and damages, but they "refused to honor [the] claim, despite their duty to cover all losses related to such product defects, including product recalls, under *both* the terms of sale and a separate indemnity agreement." (Doc. 18, ¶ 47 (emphasis supplied).)

Plaintiff has now filed suit, asserting claims for (1) breach of express warranty, (2) breach of the implied warranty of merchantability, (3) breach of the implied warranty of fitness for a particular purpose, and (4) breach of contract (for alleged breach of the separate indemnification agreement). With respect to Count III, Plaintiff alleges that Defendants "knew that [Plaintiff] wanted clear resin containers with IML labels for consumer-grade frozen dairy food packaging," (Doc. 18, ¶ 64), but "[t]he Containers were not fit for [Plaintiff's] purposes when [Defendants] sold them because they broke at unacceptably high rates when so used." (Doc. 18, ¶ 68.) With respect to Count IV, Plaintiff alleges that Defendants "signed an Indemnity Agreement with [Plaintiff] on March 11, 2016, related to the Containers' sale," pursuant to which they agreed to compensate Plaintiff for any losses or damages related to "any breach of . . . . warranties related to the Containers; any defect in the Containers; or any voluntary recall of products related to the Containers for any reason." (Doc. 18, ¶¶ 71-72.)

IPL USA contends that Counts III and IV must be dismissed because they are not adequately pleaded.  It argues that Count III must be dismissed because the Amended Complaint does not adequately allege that it knew that the Containers would be used for a particular purpose separate and apart from the Containers' regular purpose.  It also argues that Count IV must be dismissed because the Amended Complaint does not sufficiently identify the indemnity agreement.  Plaintiff contends that the Amended Complaint adequately alleges both claims.  The Court resolves the parties' arguments below.

## II.  DISCUSSION

Under Rule 12(b)(6), the Court is limited to a review of the Complaint, exhibits attached to the Complaint, and materials necessarily embraced by the Complaint, *e.g., Mattes v. ABC Plastics, Inc.,* 323 F.3d 695, 697 n.4 (8th Cir. 2003), and the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff[ ]." *Stodghill v. Wellston School Dist.*, 512 F.3d 472, 476 (8th Cir. 2008).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citations omitted).  A claim is facially plausible if it allows the reasonable inference that the defendant is liable for the conduct alleged. *E.g., Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Horras v. American Capital Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.

Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.

### A. Count III – Breach of Implied Warranty of Fitness for a Particular Purpose

The parties do not conduct a choice of law analysis to determine which state's law governs Plaintiff's warranty claims. Plaintiff represents that its claims will be governed by Missouri or Minnesota law and suggests that the law of both jurisdictions is the same because both states have enacted Article 2 of the Uniform Commercial Code. (Doc. 28, p. 7 n.4.) IPL USA relies solely on Missouri authorities. Therefore, the Court will rely on Missouri law. Section 400.2-315 of the Revised Missouri statutes codifies § 2-315 of the UCC and provides as follows:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods there is unless excluded or modified under section 400.2–316 an implied warranty that the goods shall be fit for such purpose.

Missouri courts have relied on the UCC Comments for interpretive purposes, and Comment 2 to § 2-315 provides that a "'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business." *See Howard Const. Co. v. Bentley Trucking, Inc.,* 186 S.W.3d 837, 842 (Mo. Ct. App. 2006). The "particular purpose" must be different from the product's ordinary purpose; a claim that a product is not fit for its ordinary purpose is already covered by the warranty of merchantability. *In re Bispehenol-A (BPA) Polycarbonate Plastic Prods. Liability Litig.,* 687 F. Supp. 2d 897, 909 (W.D. Mo. 2009) ("*In re BPA*"). Comment 2 makes this point as well, explaining that

> [a] "particular purpose" differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily

4

made of the goods in question. For example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains.

Here, Plaintiff has alleged that IPL USA knew Plaintiff wanted to use the Containers to package frozen dairy products for resale, and that it was relying on IPL USA's expertise. IPL USA argues that these allegations do not sufficiently allege the Containers had a "particular purpose" apart from their "regular purpose" because the Amended Complaint "merely alleges that [Plaintiff] purchased the containers for consumer-grade frozen dairy food packaging, which is the ordinary use for the Containers." (Doc. 23, p. 5.) IPL USA reiterates this point in its Reply Suggestions, stating that "the Containers at issue are customarily used to package 'consumer-grade frozen dairy food packaging.'" (Doc. 30, p. 3 n.2.) However, nothing in the Amended Complaint establishes that this is the ordinary use for the Containers. The Amended Complaint alleges that another customer used the Containers for this purpose, (Doc. 18, ¶ 18), but the fact that one other customer used the Containers to hold consumer-grade frozen dairy products does not establish this is the Containers' ordinary purpose.

The ordinary purpose of containers is to hold things, but not all containers can be used for the particular purpose of holding frozen dairy products. It may be that further development of the Record will demonstrate that the Containers' ordinary use is to hold consumer-grade frozen dairy products, in which case summary judgment on Count III might be appropriate, leaving Plaintiff to rely solely on the warranty of merchantability. "[T]he implied warranty of fitness for a particular purpose has no particular role when the good is used for its ordinary purpose. At best, it would be redundant." *In re BPA,* 687 F. Supp.2d at 909. However, construed in Plaintiff's favor, the Amended Complaint alleges a particular purpose for the Containers that may be different from their ordinary purpose, so Count III cannot be dismissed.

## B. Count IV – Breach of the Indemnity Agreement

To state a claim for breach of contract, a plaintiff must identify the rights or obligations that were allegedly breached. *Gillis v. Principia Corp.,* 832 F.3d 865, 871-72 (8th Cir. 2016). "To determine whether [a plaintiff] has stated a breach-of-contract claim, [the court] must necessarily identify the promises that [the plaintiff] relies upon and determine whether those purported promises create rights and obligations on [the defendant's] behalf." *Id.* at 872.[1] IPL USA does not dispute that Count IV clearly refers to a specific document executed by it on March 11, 2016, nor does it dispute that Count IV sets forth the salient terms of that agreement. (*See* Doc. 23, p. 8 (quoting Doc. 18, ¶¶ 71-72).) Instead, it argues that the Amended Complaint is insufficient because in the general allegations outside of Count IV, the Amended Complaint sets forth language appearing in the purchase orders. (*See* Doc. 23, p. 8 (quoting Doc. 18, ¶ 29).) IPL USA then professes that it does not know which agreement is at issue in Count IV, and for that reason the Amended Complaint is infirm.

The Court does not agree with IPL USA, and instead agrees with Plaintiff that the basis for Count IV is quite clear. The Amended Complaint contains allegations about various aspects of the parties' relationship, and it is unsurprising that in doing so the Amended Complaint describes various documents. This does not make Count IV confusing or inadequate. Count IV specifies the agreement that forms the basis for the claim asserted in Count IV, as well as the provisions at issue.[2] Therefore, Count IV adequately states a claim.

---

[1] IPL USA cites *Gillis* and attributes to it (without specifying the page number) the following quote: "Under Missouri law, a complaint fails to state a claim for breach of contract if it does not clearly set out plaintiff's rights or defendant's obligations under the contract; vague references to unspecified agreements are insufficient to state a claim." (Doc. 23, p. 7.) Similar statements are set forth over the course of several sentences in footnote 11 of the opinion, but this precise quote only appears in headnote 12 – which, of course, is not part of the opinion.

[2] The agreement is not attached to the Amended Complaint, but IPL USA does not contend that dismissal is appropriate for that reason. (Doc. 23, p. 7.)

## III. CONCLUSION

For the reasons stated above, IPL USA's Motion to Dismiss Counts III and IV is **DENIED.**

**IT IS SO ORDERED.**

                                           /s/ Beth Phillips  
                                           BETH PHILLIPS, CHIEF JUDGE  
Date: January 8, 2020                 UNITED STATES DISTRICT COURT